UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NIHAL ERKAN, on behalf of herself and all
Others similarly situated,　　　　　　　　　　　　Docket No. 23-cv-09553

　　　　　　　　　　Plaintiffs,

　　　　　-against-　　　　　　　　　　　　　　**AFFIDAVIT IN SUPPORT**

DAVID A. HIDALGO, M.D., P.C.,

　　　　　　　　　　Defendant.
------------------------------------------------------------X

　　BRANDON SHAW, being duly sworn, deposes and states:

1. I am over 18 years of age and competent to make this declaration, which I make based on my personal knowledge. I further make this statement in support of Defendant's motion to dismiss the First Amended Complaint in the above-referenced matter.

2. I graduated from Brigham Young University-Idaho in 2010 with a degree in Information Systems. I have 15 years' experience as a Web Developer.

3. I am employed by Advice Media as the Director of Product Development, a position I have held since 2014. I have worked at Advice Media since 2014 in a variety of roles, including Director of Web Design and Development.

4. Advice Media is a website design, development, and management company, specializing in the medical and dental fields.

5. Defendant David A. Hidalgo, M.D., P.C. retained Advice Media in October, 2013 to design, develop and maintain its website. The ongoing services provided by Advice Media to David A. Hidalgo, M.D., P.C. include, but are not necessarily limited to, web design, development, hosting, and

1

maintenance.

6. Throughout my tenure with Advice Media, I have had responsibility (as part of a dedicated team of technology, digital and marketing personnel) for the website of David A. Hidalgo, M.D., P.C. (www.drdavidhidalgo.com) and the website's content management, user experience design, feature definitions, functionality, usability, and accessibility.

7. Part of my work for Defendant over the past ten years has involved my efforts concerning the Defendant's website, the site experience, and its accessibility to site visitors, including the visually impaired.

8. In connection with that work, I am very familiar with and conversant with the World Wide Web Consortium ("W3C") recommendations for website accessibility as they are codified in the Web Content Accessibility Guidelines ("WCAG"). Those guidelines — currently referred to as "WCAG 2.1" — help to ensure consistent and uniform compliance with the Americans with Disabilities Act (ADA).

9. I respectfully submit this Affidavit in support of the Defendant's motion to dismiss this action as moot, and to share with the Court the Defendant's significant and unwavering commitment to ensuring access to its website for all users, including those who are visually impaired.

**The Defendant is Not an "on-line Retail Company"**

10. I would be remiss at the outset not to note that Defendant is not an on-line retail company that owns and operates a website offering products. There is nothing for sale at www.drdavidhidalgo.com, nor are any services provided on

the website.

11. Rather, David A. Hidalgo, M.D., P.C. is a medical practice that offers aesthetic plastic surgery. Thus, its website is for informational purposes only – basically, it is static/passive, akin to a "billboard" if you will.

12. Of course, this information can also be provided through a telephone call or a visit to the medical practice's offices.

13. I have been informed by Defendant's legal counsel that the Plaintiff in the above-referenced matter (and her lawyers) are serial litigants who simply cut and paste their allegations from one lawsuit to the next, without much investigation into the actual business practices of the entities they recklessly choose to sue.

## Plaintiff's Allegations

14. I have been informed that Plaintiff's Complaint in this legal matter was filed on December 28, 2023 and was served on David A. Hidalgo, M.D., P.C. on or about January 24, 2024.

15. Shortly thereafter, David A. Hidalgo, M.D., P.C. forwarded the Complaint to Advice Media, with a request that we audit the medical practice's website, in order to determine if the website is, indeed, compliant with the ADA, and if not, to bring it into compliance.

16. We immediately performed the requested audit, ensured that the website was compliant with the ADA, and made the website even more accessible than it already was by adding to or improving the "alt text" associated with images

3

and "aria labels" associated to web elements where such were lacking or incomplete.

17. I have also been provided with the Plaintiff's First Amended Complaint, which I have been told was filed on June 13, 2024. This Amended Complaint, which I have carefully reviewed, adds very little in terms of allegations regarding the alleged inaccessibility of David A. Hidalgo, M.D., P.C.'s website.

18. The First Amended Complaint asserts that the Plaintiff visited the Defendant's website on November 9 and November 10, 2023, and in doing so, allegedly encountered a number of accessibility issues.

19. I will address each such allegation, most if not all of which appear in Paragraphs "29" through "34" of the First Amended Complaint.

**Alternative-Text and Images**

20. First, the Plaintiff alleges that there are many pictures on the website either lack a text equivalent (known as "alternative-text" or "alt-tex"), or had inappropriate and unclear alt-text, and that this prevents screen readers from accurately vocalizing a description of the graphics.

21. This is untrue. Alt-text is added to **all** images on the website by default. However, due to the nature of these photos (for example, "before" and "after" photos of aesthetic surgical procedures), it is a basic text, and simply informs the viewer that the photo is either a "before" or "after" photo. There is no possible way to describe the photograph in greater detail.

22. In addition, while the ADA requires alt-text, there is no requirement which specifies the level of detail which is necessary. This is especially true with regard to "before" and "after" photos, such as those found on the Defendant's website.

23. As stated above, this website is not a retail site. Thus, we are not describing, for example, a "red long-sleeve button down shirt with blue horizontal stripes".

**Alternative-Text and Online Forms**

24. Plaintiff further complains that the website lacks prompting information and accommodations necessary to allow blind customers who use screen-readers to locate and accurately fill-out online forms.

25. With regard to this allegation, Plaintiff was partially correct, but to the extent there was any issue, we corrected it. The only relevant form on the website is the "Contact Us" form. As of November 9, 2023, this form did not have Field Labels above the form fields themselves. Instead, the website used Placeholder Text, which is when the name of the field is within the field itself. With Placeholder Text, the screen reader would see "Field 1", "Field 2", etc. but it may not be clear to a user what information was supposed to be entered within the fields themselves.

26. To remedy this, we have updated the only relevant form on the website, which is the "Contact Us" form, so that the Field Labels display above the form fields. In other words, a screen reader will now read "Name", "Telephone Number", etc. rather than "Field 1", "Field 2", etc.

27. These field labels also more clearly indicate what the fields are and whether or not they are required. As an aside, no fields are required to be completed in order to submit the "Contact Us" form.

**Voice-Over**

28. Plaintiff further alleges that while using Voice Over, she encountered a number of alleged accessibility issues.

29. First, she asserts that landmarks were not properly inserted into the home page, and as a result, she was unable to access its main regions.

30. This is untrue. Landmarks are intended to show flow down the page. Standards involve designating the flow of the page and topics in the order of their importance. The Defendant's website, www.drdavidhidalgo.com, has headings in place for each section of the Homepage, which informs the user of the change in content and flow of information.

31. Second, Plaintiff asserts that she was confused by the announcement of the constant update of the moving content, allegedly caused by the "atri-live" attribute of the carousel region.

32. This is also a confusing allegation. There are two slider/carousel elements on the website, both of which are on the Homepage. The first is the Homepage banner (top of the website where several images rotate through), while the second is the Testimonials section of the website. Both of these sections announce to a user when the slides change. This is intentional, and required by the ADA. These sections are doing exactly what they should be doing vis-à-vis allowing access for the visually impaired.

### Navigating submenus

33. Plaintiff complains that the Navigation sub-menus with drop-down lists did not announce their state – i.e., "collapsed" or "expanded". Thus, and again according to the First Amended Complaint, Plaintiff could not determine in which part of the submenu the keyboard focus was located, or if the links were skipped.

34. Plaintiff is evidently referring to how the header (i.e. logo, menu, social media icons, etc. at the top of the website) modifies the navigation menu upon scrolling. When a visitor first opens the website, one can see all of the menu tabs written out (i.e. Home, Dr. Hidalgo, etc.). However, once one starts to scroll, the sticky header collapses those items into what is referred to as a "hamburger" menu, which is a small rectangle with 3 horizontal lines.

35. While I strongly believe that the website as constituted in November 2023 was sufficient to allow visually-impaired users to navigate it with screen readers, we have modified it so that such users are able to always see the full navigation menu, and click the main tabs or drop-down elements. We have done this by removing the "hamburger" menu, thus ensuring that the full menu is always visible.

36. Plaintiff also complains that the navigation menu did not allow the repeated content to be expanded or collapsed, and that it expanded automatically after receiving focus. While Advice Media disagrees that this is a violation of the ADA, this issue was rectified by the removal of the "hamburger" menu, as set

forth above, as well as the update to the website to ensure the full menu is always visible, which is also explained above.

**Links**

37. Plaintiff alleges that she encountered links that did not describe the content of the link target, and that there were no details as to what kind of information can be found on the destination page.

38. This is false. Similar to the alt-text for images, the website does have descriptions for hyperlinks. For example, if a screen reader was to look at the Facebook icon in the header of the website, it would read the hypertext reference as a link and then read the text "Facebook (opens in a new tab)." This text is specific, and lets the user know not only what the link is for, but how it will open when clicked.

39. In fact, upon receiving the Plaintiff's original Complaint, Advice Media scanned the website and could not find any links that didn't follow that same process. In other words, there are no links that did not describe the link target and how it will open when clicked.

40. Plaintiff also asserts that in an attempt to access an element, she did not receive any relevant information about the link target, such as the type and size of the opened file (PDF). Thus, Plaintiff alleges, she was confused when the context of the page suddenly changed, and she was unable to navigate through it using the keyboard.

41. This is also a confounding allegation. As with the allegation regarding hyperlinks, as described above, the website does have access to hyperlinks.

Again, upon receiving the Plaintiff's original Complaint in this regard, Advice Media reviewed and scanned the entire website, and did not locate any links that were not described in the link target sufficiently.

42. Plaintiff further complained that links led to other websites did not indicate that they were external, and as a result, she was disoriented.

43. Again, this is an odd complaint, and is not accurate. As noted above, the website has descriptions for hyperlinks, and upon reviewing and scanning the website thoroughly, Advice Media could not find any link that did not describe the link target sufficiently. In addition, there is no ADA regulation that requires external links to explicitly state they are, indeed, external.

**Form Fields**

**Information about the Defendant, its Services and Location**

44. The Plaintiff asserts that due to lack of adequate labeling, she and other blind customers cannot find information about the company, its services and location.

45. This is incorrect. Those details are, and have been, located in the footer section of the website. While this information has always been accessible to the visually impaired, we have updated this section so that it is even more easily read by screen readers by adding HTML schema markup.

46. Finally, Plaintiff complains that the website requires the use of a mouse to complete a transaction. However, there is nothing in WCAG 2.1 that states that a mouse can't be required when navigating a website.

### New Allegations in the Plaintiff's First Amended Complaint

47. Plaintiff's First Amended Complaint adds two new allegations with regard to the accessibility of the Defendant's website. First, in Paragraph 32(a), Plaintiff states that the accessibility widget on the bottom-left of the website's homepage renders the Plaintiff's screen-reader unusable. This is untrue.

48. Obviously, we are unable to determine the effectiveness of the Plaintiff's screen-reader, as we do not have access to it. However, www.drdavidhidalgo.com does have an accessibility widget which contains an option to optimize the website for screen-reader. This option standardizes output, which assists a whole range of available screen readers, including but not necessarily limited to JAWS, NVDA, VoiceOver and TalkBack. A screenshot of that option is annexed hereto as Exhibit "A".

49. Thus, contrary to Plaintiff's assertion that this makes her screen-reader unusable, this option enhances the ability of the visually-impaired to navigate and otherwise use the website.

50. Second, in Paragraph "33" of the Complaint, the Plaintiff asserts that the Defendant utilizes AccessiBe, which is a computer application developed and marketed by a firm called Accessible, to make its website ADA compliant. The Plaintiff then quotes from various articles which apparently conclude that this application is not sufficient to ensure full and equal access to a website for the visually-impaired.

51. While the website at issue herein does use AccessiBe, I want to be clear with the Court that this is only one "tool" used by AdviceMedia's to ensure

accessibility for the visually-impaired. As stated above, AdviceMedia actively manages the Defendant's website on an ongoing basis. This includes monitoring its accessibility to site visitors, including the visually-impaired.

52. In addition, and as set forth in detail above, I have carefully reviewed the Defendant's website and found it to be in compliance with WCAG 2.1, and thus fully accessible.

53. One of the services that Accessible provides is a periodic compliance report. Attached hereto as Exhibit "B" is the compliance report for www.drdavidhidalgo.com dated June 1, 2024. As can be seen from this report, the Defendant's website is in compliance with WCAG standards.

**The Defendant's On-Going Compliance**

54. As set forth above, the Defendant has and will remain vigilant in its efforts to operate an ADA-compliant website, including for visually impaired and legally blind individuals, and will remain committed to the same moving forward. The website will be scanned and evaluated monthly as part of a routine maintenance plan. Any identified improvement opportunities will be implemented on that schedule.

55. Finally, I wish to stress once again that the website at issue herein, www.drdavidhidalgo.com, was in compliance with WCAG 2.1, and thus the ADA, prior to Plaintiff's first visit to that site on November 9, 2023.

56. However, as a result of our review and audit of the site upon the receipt of Plaintiff's Complaint, we have made the website even more accessible and even easier to navigate for the visually-impaired and blind.

_____
BRANDON SHAW

Sworn to before me this 12th day of July, 2024.

_____
NOTARY PUBLIC

NOTARY PUBLIC
NATALIE FRANSON
736270
MY COMMISSION EXPIRES
MARCH 25, 2028
STATE OF UTAH