UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NIHAL ERKAN, on behalf of herself and all
Others similarly situated,

Plaintiffs,

-against-

DAVID A. HIDALGO, M.D., P.C.,

Defendant.
------------------------------------------------------------X

Docket No. 23-cv-09553

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

FEATHER LAW FIRM, P.C.
Attorneys for Defendant
666 Old Country Road, Suite 509
Garden City, New York 11530

David S. Feather
*On the Brief*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................. i

INTRODUCTION AND PROCEDURAL HISTORY.................................. 1

STATEMENT OF FACTS.................................................................. 1

   BACKGROUND.......................................................................... 1

   PLAINTIFF'S ALLEGATIONS ..................................................... 2

ARGUMENT .................................................................................. 3
STANDARD TO BE APPLIED IN DETERMINING A MOTION TO DISMISS

POINT I ........................................................................................ 5
PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS LAWSUIT

POINT II ....................................................................................... 10
PLAINTIFF'S CLAIMS ARE MOOT BECAUES DAVID A. HIDALGO, M.D., P.C.
HAS REMEDIED ALL ALLEGED ADA VIOLATIONS

POINT III ...................................................................................... 13
PLAINTIFF'S FIRST CAUES OF ACTION SHOULD BE DISMISSED BECAUSE
SHE HAS FAILED TO STATE A CLAIM PURSUANT TO TITLE III OF THE
AMERICANS WITH DISABILITIES ACT

   A. Plaintiff Does Not Allege Facts Stating a Plausible Claim that She Was ............. 13
      Denied an Equal Opportunity under the ADA to Enjoy the Products and
      Services Provided by Defendant

   B. The Defendant's Website is Not a "Public Accommodation" Under the ADA ...... 14

   C. Plaintiff Does Not Allege that She Requested an Accommodation or ................ 14
      Correction of the Defendant's Website Prior to Filing Her Action

POINT IV ...................................................................................... 15
PLAINTIFF'S NEW YORK STATE AND NEW YORK CITY CAUSES OF ACTION
SHOULD BE DISMISSED FOR THE SAME REASONS THIS COURT SHOULD
DISMISS PLAINTIFF'S ADA CLAIM

POINT V ....................................................................................... 15
THE COURT SHOULD DISMISS FIFTH CAUSE OF ACTION AS AND FOR
DECLARATORY RELIEF

**POINT VI** ............................................................................................ 16

IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S NEW YORK STATE
AND NEW YORK CITY CAUSES OF ACTION

**CONCLUSION**.............................................................................................. 17

**CASES:**

*Amidax Trading Group v S.W.I.F.T. SCRL,*
    671 F3d 140 [2d Cir 2011]) ................................................................4

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................4, 5

*Bacon v. Walgreen Co.,*
    91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015)........................................11

*Brief v. Albert Einstein College of Medicine,*
    423 Fed. App'x 88, 90 (2d Cir. 2011)..........................................10

*Calcano v Swarovski N. Am. Ltd.,*
    36 F.4th 68 [2d Cir 2022])..................................................6, 7, 9, 15

*Carnegie-Mellon Univ. v Cohill,*
    484 US 343 [1988], 350, n. 7, (1988)..........................................16

*Castillo v Hudson Theatre, LLC,*
    412 F Supp 3d 447 [SDNY 2019]................................................14

*Colón v Puerto Rico Convention Ctr. Dist. Auth.,*
    2023 US Dist LEXIS 162459 (D.PR)...........................................14

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.,*
    790 F.3d 411, 416-17 (2d Cir. 2015).............................................5

*Diaz v. Kroger Co.,*
    2019 U.S. Dist. LEXIS 93177 *3 [SDNY]..................................11, 12, 13

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104, 111 (2d Cir. 2010)................................................5

*Fontanez v Val. Lahvosh Baking Co.,*
    2023 US Dist LEXIS 149437 [SDNY]...........................................8

*Graves v Finch Pruyn & Co.,*
    457 F3d 181 [2d Cir 2006].....................................................15

*Guglielmo v. Neb. Furniture Mart, Inc.,*
    2020 U.S. Dist. LEXIS 238707, 2020 WL 7480619, at *6 [S.D.N.Y.].....................11

*Hogan v. Fischer,*
    738 F.3d 509, 514 (2d Cir. 2013)............................................................4

*Jaquez v Aqua Carpatica USA, Inc.,*
    2021 US Dist LEXIS 157918 [SDNY]....................................................16

*Loadholt v. Game Goblins, LLC,*
    2023 U.S. Dist. LEXIS 164876 [S.D.N.Y.]................................................7

*Loadholt v. Dungarees, Inc.,*
    No. 22-cv-04699 (VEC), 2023 U.S. Dist. LEXIS 26006 (2023)..................6, 7

*Loadholt v. Oriental-Décor.Com Inc.,*
    2024 US Dist LEXIS 2293[SDNY]..........................................................7

*Lopez v Peapod, LLC,*
    2021 US Dist LEXIS 54555 [SDNY] .......................................................3

*Makarova v. United States,*
    201 F.3d 110, 113 (2d Cir. 2000)...........................................................5

*Mendez v Apple Inc.,*
    2019 US Dist LEXIS 110640 [SDNY]....................................................15

*MS Fed. Acquisition, LLC v U.S. Bank Nat'l Ass'n,*
    2015 US Dist LEXIS 95152 [SDNY]......................................................16

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.,*
    712 F.3d 705, 718 (2d Cir. 2013)........................................................4, 5

*Phillips v 180 Bklyn Livingston, LLC,*
    2017 US Dist LEXIS 75154 [EDNY]......................................................16

*Ross v. Bank of America, N.A. (USA),*
    524 F.3d 217, 222 (2d Cir. 2008)...........................................................5

*Sullivan v Bdg Media,*
    71 Misc 3d 863 [Sup Ct, NY County 2021])............................................14

*Suris v Crutchfield New Media, LLC,*
    2023 US Dist LEXIS 96603 [EDNY].....................................................7, 10

*Tavarez v Extract Labs, Inc.,*
    2023 US Dist LEXIS 55615 [SDNY]................................................10, 11, 16

*Tavarez-Vargas v. Annie's Publ'g, LLC,*
  21-CV-9862 (AT), 2023 U.S. Dist. LEXIS 42955 [S.D.N.Y.)].........................8

*Thorne v Capital Music Gear LLC,*
  2024 US Dist LEXIS 67366 [SDNY]................................................................8

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021)......................................6

*Velazquez v. Everlast Worldwide, Inc.,*
  2022 U.S. Dist. LEXIS 202697 (S.D.N.Y.)...............................................7

*Winegard v Golftec Intellectual Prop. LLC,*
  674 F Supp 3d 21 [EDNY 2023]...................................................10, 14

*Zinnamon v Satya Jewelry II LLC,*
  2023 US Dist LEXIS 74479 [SDNY ]...........................................................7

## STATUTES AND OTHER AUTHORITIES

28 USCS 1367 .......................................................................................16

F.R.C.P. § 12(b)(1) ...........................................................................passim

F.R.C.P. § 12(b)(6) ...........................................................................passim

## INTRODUCTION AND PROCEDURAL HISTORY

This matter was commenced by the filing of a Summons and Complaint on December 28, 2023. [DE 1]. The Parties filed a Stipulation extending the Defendant's time to Answer or otherwise move with regard to the Complaint on February 1, 2024 ([DE 8]), which was granted by this Court on February 2, 2024.

Defendant served its papers-in-chief to dismiss the Plaintiff's Complaint on May 24, 2024. On June 13, 2024, in an attempt to avoid the dismissal of the Complaint, Plaintiff filed a First Amended Complaint. [DE 14].

Defendants now move to dismiss the Plaintiff's First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure (FRCP) §12(b)(1) for lack of subject matter jurisdiction, and FRCP §12(b)(6) for failure to state a claim for which relief can be granted.

For the reasons set forth herein, Defendant's motion should be granted in its entirety.

## STATEMENT OF FACTS[1]

## BACKGROUND

David A. Hidalgo, M.D., P.C. is an aesthetic plastic surgery practice located at 655 Park Avenue, New York, New York. Hidalgo, ¶2. Its sole shareholder is David A. Hidalgo, M.D. Hidalgo, ¶1.

Dr. Hidalgo has been licensed to practice medicine in New York State since June 1980, and is certified by the American Board of Plastic Surgery. Hidalgo, ¶3. He is a member of the American Society of Plastic Surgeons and the American Society for Aesthetic Plastic Surgery,

---

[1] This Statement of Facts comes from Plaintiff's First Amended Complaint as well as the various Affidavits and Declarations filed in support of this Motion. References to paragraphs of the First Amended Complaint are set forth herein as "First Amended Complaint, ¶ __", while references to paragraphs in the various Affidavits are set forth herein by the individual Affiant's last name, followed by the paragraph number (ex., "Hidalgo, ¶__")

and serves as a clinical professor of Surgery at Weill Cornell Medical College (New York-Presbyterian Hospital. Hidalgo, ¶3.

David A. Hidalgo, M.D., P.C. operates a website, www.drdavidhidalgo.com. This website is for informational purposes only – there are no goods or services sold on or performed through this website. Hidalgo, ¶3. The website has been maintained and hosted by a website design, development and management company, Advice Media, since in or about October 2013. Hidalgo, ¶4; Shaw, ¶¶4 and 5. Advice Media's responsibilities vis-à-vis the website include its content, user experience design, functionality, usability and accessibility, including for the sight-impaired and blind. Shaw, ¶¶ 6 and 7.

## PLAINTIFF'S ALLEGATIONS

According to the First Amended Complaint, Plaintiff is a visually impaired and legally blind person who requires screen-reading software to read website content using her computer. First Amended Complaint, ¶¶2, 16. The Plaintiff alleges that she made two attempts to visit and use Drdavidhidalgo.com prior to the commencement of this lawsuit, first on November 9, 2023, and then again the next day, on November 10, 2023, but was unable to do so.[2] First Amended Complaint, ¶37. In her Original Complaint, Plaintiff stated that she was interested in a "variety of facial plastic surgery services" offered by the "clinic", specifically a "facelift", and would like to visit one of the Defendant's physical locations. Complaint, ¶10.

In her First Amended Complaint, Plaintiff slightly modified these assertions, stating that she is a forty-two year-old woman who has suffered from severe aging and loose facial skin in recent years, and that she wanted to make a consultation appointment with a facial plastic surgery [sic] in hopes of getting a facelift procedure. First Amended Complaint, ¶10. In any

---

[2] Plaintiff also asserts that she visited the website on March 30, 2024 and June 1, 2024. These visits were, of course, after the commencement of this action.

2

event, Plaintiff states that she came across Defendant's website and decided to analyze the services provided and contact information for the Defendant's office. First Amended Complaint, ¶10.

However, and again according to the First Amended Complaint, Plaintiff allegedly encountered serious accessibility issues on the website, preventing her from efficiently learning more about the clinic's services. First Amended Complaint, ¶10. These alleged accessibility issues are set forth in Paragraph "32" of Plaintiff's First Amended Complaint.

Finally, Plaintiff asserts that she will visit the website again immediately upon Defendant correcting the numerous accessibility barriers on it, and would like to visit one of the Defendant's physical locations. First Amended Complaint, ¶37.

It should be noted that despite the passage of nine months since her initial internet inquiry, Plaintiff does not state whether she has undergone a facelift procedure, nor whether she has made any efforts to obtain a consultation with a different plastic surgeon (despite the large number of such specialists in the New York metropolitan area). In addition, according to Dr. David A. Hidalgo, M.D., the sole shareholder of the Defendant herein, David A. Hidalgo, M.D, P.C. would not perform a facelift on a forty-two year-old, as that is too young for such a procedure. Hidalgo, ¶13.

## ARGUMENT

## STANDARD TO BE APPLIED IN DETERMINING A MOTION TO DISMISS

When presented with multiple grounds for dismissal "the court must first analyze the Rule 12(b)(1) motion to determine whether the court has subject matter jurisdiction necessary to consider the merits of the action.". *Lopez v Peapod, LLC*, 2021 US Dist LEXIS 54555 [SDNY]. Courts in the Second Circuit review a facial challenge to a court's jurisdiction under Rule

3

12(b)(1) using the same standard applied in a motion to dismiss for failure to state a claim under Rule 12(b)(6). _Amidax Trading Group v S.W.I.F.T. SCRL_, 671 F3d 140 [2d Cir 2011]). Mere "conclusory or a formulaic recitation of the elements of a cause of action will not suffice to survive a motion to dismiss under Rule 12(b)(6)". _Ashcroft v Iqbal_, 556 US 662 [2009]). To survive a motion to dismiss a complaint must do more than proffer unadorned "the defendant unlawfully harmed me" accusations _Id_. at 769. Rat her, all conclusory allegations must first be pared from the complaint, and then, the court must review the complaint's remaining allegations to determine whether the well pleaded factual allegations plausibly entitle the plaintiff to relief. _Id_. at 678-79.

To survive a motion to dismiss for failure to state a claim for relief pursuant to _Rule 12(b)(6)_, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" _Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_ (quoting _Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)_); _see also Hogan v. Fischer, 738 F.3d 509, 514 (2d Cir. 2013)_. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal, 556 U.S. at 678_; _see also Hogan, 738 F.3d at 514_. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." _Iqbal, 556 U.S. at 678_; _see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 718 (2d Cir. 2013)_. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." _Iqbal, 556 U.S. at 679_ (citation omitted).

In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)*. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678*; *see also Pension Benefit Guar. Corp., 712 F.3d at 717* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citations omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp., 712 F.3d at 717* (quoting *Iqbal, 556 U.S. at 679*). Finally, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S. at 555*).

## POINT I

### PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS LAWSUIT

A case is properly dismissed for lack of subject matter jurisdiction under *Rule 12(b)(1)* when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)*. "Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Ross v. Bank of America, N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008)* (quoting *Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)*). A district court must dismiss a complaint for lack of subject matter jurisdiction if a plaintiff fails to establish standing to bring the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 416-17 (2d Cir. 2015)*.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

5

defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021)*.

The Second Circuit Court of Appeals has applied *TransUnion* in the ADA context, setting forth clear requirements for what a Plaintiff must allege to demonstrate injury in fact, and requiring factual specificity in making these allegations. In the ADA context, "a plaintiff seeking injunctive relief has suffered an injury in fact when: (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the subject location.'" *Calcano v Swarovski N. Am. Ltd., 36 F.4th 68 [2d Cir 2022])*(quoting *Kreisler v Second Ave. Diner Corp., 731 F3d 184 [2d Cir 2013]*. The "central inquiry" of the third factor is "not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Id. at 75* (internal quotation marks omitted) (quoting *Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1233 (11th Cir. 2021)*).

In the context of a website, a plaintiff can satisfy this intent-to-return requirement with "non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website." *Loadholt v. Dungarees, Inc., No. 22-cv-04699 (VEC), 2023 U.S. Dist. LEXIS 26006 (2023)* (citing *Harty v. W. Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022)*). However, "a mere 'profession of an intent to return to the places' previously visited is 'not enough' to establish standing for prospective relief." *Calcano, 36 F.4th at 78* (quoting *Lujan, 504 U.S. at 564*).

Following *Calcano*, district courts in the Second Circuit have dismissed ADA website

claims regarding website accessibility similar to the one at bar for lack of standing when those matters simply state conclusory allegations similar to what Plaintiff states here, without the requisite specificity required by *Calcano*. *See, e.g., Velazquez v. Everlast Worldwide, Inc., 2022 U.S. Dist. LEXIS 202697 (S.D.N.Y.)* (holding Plaintiff's "fail[ed] to adequately allege standing, as [the complaint's allegations] are at least as conclusory as the allegations in *Calcano*"); *(Loadholt v Dungarees, Inc.*, 2023 US Dist LEXIS 26006 [SDNY] ("Plaintiff's allegations that he visited the website 'with the intent of shopping for and potentially making a purchase' of those items, and 'would still like' to return to the website to 'potentially purchase' the items, does no more to allege intent to return than the boilerplate allegations described in *Calcano*."); *Loadholt v Oriental-Decor.Com Inc.*, 2024 US Dist LEXIS 2293 [SDNY] (claim dismissed when there were no allegations as to plaintiff's "interest in purchasing goods from Defendant . . .why these particular [goods] are unique, or why he desires to buy them from Defendant's website as opposed to others"); *Loadholt v. Game Goblins, LLC, 2023 U.S. Dist. LEXIS 164876 [S.D.N.Y.]* (plaintiff "does not explain what board games he is interested in, whether Defendant is the only retailer who sells those games, or why he will return to Defendant to purchase them as soon as the accessibility barriers are cured"; *Zinnamon v Satya Jewelry II LLC*, 2023 US Dist LEXIS 74479 [SDNY ] (clam dismissed where there were no allegations as to why the plaintiff needs or wants jewelry, or whether he looked for comparable jewelry elsewhere); *Dungarees, Inc., 2023 U.S. Dist. LEXIS 26006 (S.D.N.Y.)* ("Plaintiff does not allege the genesis for his sudden need or want for 'belts' and 'jackets,' or that [the defendant] is the only retailer that sells the particular belts and jackets he wants, or that he has searched for comparable belts and jackets but has been unable to find them at a comparable price point."); *Suris v Crutchfield New Media, LLC*, 2023 US Dist LEXIS 96603 [EDNY] (finding that plaintiff lacked standing where he failed to specify

when he planned to return to the defendant's website); *Tavarez-Vargas v. Annie's Publ'g, LLC, 21-CV-9862 (AT), 2023 U.S. Dist. LEXIS 42955 [S.D.N.Y.)]*(finding no standing where plaintiff alleged that she visited an online retailer twice to purchase a "hook and needle kit" and that she "unequivocally intends to return to the website . . . as soon as the accessibility barriers are cured"); *Fontanez v Val. Lahvosh Baking Co.*, 2023 US Dist LEXIS 149437 [SDNY) (finding no standing where plaintiff failed to allege "why he was so interested in acquiring" defendant's product or "whether he searched for comparable" products);

In the recent case of *Thorne v Capital Music Gear LLC*, 2024 US Dist LEXIS 67366 [SDNY], the plaintiff alleged that he had visited the defendant's website on "several occasions", but failed to state with any detail why he was attracted to defendants' products, or why this particular website appealed to him. Plaintiff therein further asserted that he intended to revisit the website to purchase drumsticks from defendant as soon as the access barriers were removed from the website. The Court held that this formulaic recitation of the required standing element without addition explanation was insufficient, and dismissed the lawsuit based on lack of standing.

In the case at bar, Plaintiff has set forth an exact formulaic recitation of the required standing element, by simply asserting that she is interested in a "facelift", and would like to schedule a consultation. First Amended Complaint, ¶10.

Despite this alleged interest, Plaintiff does not assert that she did anything after visiting the website, such as attempting to contact the Defendant via telephone or email, in order ascertain the type, extent and cost of the Defendant's services. In addition, there are no allegations as to why Plaintiff was so interested in the Defendant's particular services, or whether she visited other, similar websites seeking similar information. Neither does she set forth

whether she ever underwent a facelift procedure, despite the passage of nine months since her initial visit to the Defendant's website.

Another revision from the Plaintiff's original Complaint to her First Amended Complaint is her assertion that she was prevented from reaching the medical practice's telephone line, and that she couldn't "find information about the Defendant's phone number". First Amended Complaint, ¶¶10, 35. This, however, is absolutely false. Even if Plaintiff could not access the medical practice's telephone number on its website (which Defendant contends is untrue), there are a plethora of other websites that do contain the phone number. This includes, but is not limited to, Google, Instagram, Yelp and Castle Connolly Top Doctors. The first page of these websites are annexed collectively to the Affidavit of David A. Hidalgo, M.D, as Exhibit "A". What is apparent is that Plaintiff made no effort to contact the medical practice in any fashion.

Plaintiff's conclusory and implausible allegations herein are insufficient to satisfy the "intent to return" requirement for standing, and warrants dismissal of the Plaintiff's First Cause of Action. She offers only a vague assertion of her intent to return to the website, and thus utterly fails to establish a likelihood of intent to return. The added fact that Plaintiff never contacted David A. Hidalgo, M.D., P.C, directly via telephone or email (see Hidalgo, ¶¶15 and 16), and that she has filed fifty (50) other nearly identical complaints against websites in this district in the last eight-and-a-half months further undermines the sincerity of her conclusory allegation that she intends to intent to return to www.drdavidhidalgo.com., and further reinforces the conclusion that she actually has no plausible intent to do so. *See Calcano v Cole Haan LLC, 2021 US Dist LEXIS 41734 [SDNY])* ("the existence of [plaintiff's] numerous, identically-worded complaints undercut the plausibility of his allegations"). Finally, Plaintiff does not set forth any efforts she has made in the ensuing nine (9) months since her alleged initial visit to the

website to contact or consult with other plastic surgeons, or whether she has undergone her desired facelift.

As the Honorable Brian M. Cogan opined in *Winegard v Golftec Intellectual Prop. LLC, 674 F Supp 3d 21 [EDNY 2023]*, "[t]o find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites . . . and bring 50 lawsuits. Standing requires more."

For the reasons set forth herein, Plaintiff lacks standing in this case, and thus, her lawsuit should be dismissed in its entirety.

**POINT II**

**PLAINTIFF'S CLAIMS ARE MOOT BECAUSE DAVID A. HIDALGO, M.D., P.C.
HAS REMEDIED ANY ALLEGED ADA VIOLATION**

Like standing, mootness is addressed under FCRP 12(b)(1). (*Tavarez v Extract Labs, Inc.*, 2023 US Dist LEXIS 55615 [SDNY]. For a federal court to subject matter jurisdiction, "an actual controversy must be extant at all states of [its] review", and, "if an intervening circumstance deprived the plaintiff of a personal stake in the outcome of the lawsuit, at any point in the litigation, then the action...must be dismissed as moot". *Suris v. Crutchfield New Meda, LLC, 2023 U.S. Dist. Lexis 96603 (E.D.N.Y.).* In resolving a motion to dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1), a district court may refer to evidence outside the pleadings. *Id.*

Title III of the ADA allows only for injunctive relief, not monetary damages. Brief v. Albert Einstein College of Medicine, 423 Fed. App'x 88, 90 (2d Cir. 2011) (citing Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 86 (2d Cir. 2004)). Therefore, under certain circumstances, a claim under the ADA can become moot if a defendant remedies the access barrier during the

pendency of the litigation. *See* Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (collecting cases).

The Second Circuit applies a two-part test to determine whether a defendant's voluntary cessation has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Extract Labs*, *supra*. (quoting *Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 110 (2d Cir. 2010)*).

Courts find that defendants have satisfied this "formidable burden" in ADA website accessibility cases if they produce an affidavit or declaration that has a sufficient "level of detail" and explains why and how the defendant has taken measures to ensure that its website is in full compliance with the WAGC's best practices. *Diaz, 2019 U.S. Dist. LEXIS 93177 *3*; *see also* *Guglielmo v. Neb. Furniture Mart, Inc., 2020 U.S. Dist. LEXIS 238707, 2020 WL 7480619, at *6 [S.D.N.Y.]*. Similarly, in *Tavarez v. Extract Labs, Inc., supra*, the Court surveyed recent authority and concluded that "courts in this district have found that [the defendant's] burden can be met by submitting affidavits and other evidence demonstrating that the defendant has altered the website to bring it into full and permanent compliance and has no intention of regressing back to inaccessibility."

In the case at bar, upon learning of the lawsuit and its allegations regarding website inaccessibility, Defendant immediately contacted Advice Media, its website design, development and management company. Hidalgo, ¶6. Dr. Hidalgo provided Advice Media with a copy of the Complaint (and later, the First Amended Complaint), and asked that they investigate the Plaintiff's claims and report back to him. Hidalgo, ¶6; Shaw, ¶¶15 and 17. Advice Media did so. The steps that Advice Media took to investigate the claims set forth in both the Plaintiff's

original Complaint and First Amended Complaint, and to rectify any meritorious ones, are set forth in the Affidavit of Brandon Shaw, who is employed as Advice Media's Director of Product Services.

In general terms, Advice Media concluded that the website at issue herein, www.drdavidhidalgo.com, was in compliance with WCAG 2.1, and thus the ADA, prior to Plaintiff's first visit to that site on November 9, 2023. Shaw, ¶¶52, 55. However, as a result of their review and audit of the site upon the receipt of Plaintiff's original Complaint, Advice Media made the website even more accessible and even easier to navigate for the visually-impaired and blind. Shaw, ¶56.

According to Mr. Shaw, Advice Media also utilizes AccessiBe, which is a computer application developed and marketed by a firm called Accessible, to assist it in making the Defendant's website ADA compliant. Shaw, ¶51. However, Mr. Shaw makes clear that this is only one "tool" used by Advice Media to ensure accessibility for the visually-impaired. Shaw, ¶51. As set forth in Mr. Shaw's Affidavit in Support of this Motion, Advice Media also actively manages the Defendant's website on an ongoing basis, which includes monitoring its accessibility to the visually-impaired and blind. Shaw, ¶51

Finally, Mr. Shaw affirms that Advice Media will scan and evaluate the website monthly as part of a routine maintenance plan, and that any identified improvement opportunities will be implemented on that schedule. Shaw, ¶54.

Numerous district courts within the Second Circuit have held that similar efforts as those undertaken by Defendants and Advice Media have rendered website-based ADA claims moot. For example, in *Diaz v. Kroger, supra*, the court found the plaintiff's claims moot where one of defendant's officers averred specifically that (i) Defendant undertook compliance with [certain

accessibility] standards before the lawsuit was filed; (ii) the Website was, at the time the motion to dismiss was filed therein, compliant with those standards; (iii) he personally confirmed that the specific barriers to access identified in Plaintiff's initial and amended complaints "have been remedied and that no such barriers to access, as alleged, still exist with the website"; (iv) Defendant has no intention of undoing those changes or regressing to non-compliance with the ADA; and (v) Defendant commits "to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible. *Diaz v Kroger Co.*, 2019 US Dist LEXIS 93177 [SDNY]) (citation omitted); *see also Extract Labs., supra.* (holding that the complaint was moot where a Defendant had undertaken "an audit process," found "few instances of the barriers alleged," "resolved each of the identified issues", and "hired an independent contractor and expert" in accessibility guidelines "to remedy any other emergent issues after auditing its new website").

For the reasons set forth herein, Plaintiff's ADA claims are moot, and thus this Court should dismiss Plaintiff's First Cause of Action.

## POINT III

### PLAINTIFF'S FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE SHE HAS FAILED TO STATE A CLAIM PURSUANT TO TITLE III OF THE AMERICANS WITH DISABILITIES ACT

A. Plaintiff Does Not Allege Facts Stating a Plausible Claim that She Was Denied an Equal Opportunity under the ADA to Enjoy the Products and Services Provided by Defendant

To state a claim under Title III of the ADA, Plaintiff must plead that the Defendant discriminated against her by denying her a full and equal opportunity to enjoy the services Defendant provides. Plaintiff has failed to do so. As stated above, there are no goods or services sold on or provided through the Defendant's website. Plaintiff could have contacted Defendant through other means, such as by telephone or email, but failed to do so. In addition, and

obviously, any plastic surgery services must be done in Defendant's offices or in another physical location.  For those reasons, Plaintiff's First Cause of Action brought pursuant to the ADA should be dismissed.

B.  The Defendant's Website is Not a "Public Accommodation " Under the ADA

In *Winegard, supra*, the plaintiff, a hearing-impaired individual, claimed that a newspaper company's website was not accessible due to videos that lacked closed-captioning.  In dismissing the claim, the Court held that the term "public accommodation" under the ADA refers to physical places where goods and services are sold, and not standalone websites.  For those same reasons, Plaintiff's First Cause of Action should be dismissed.

C.  Plaintiff Does Not Allege that She Requested an Accommodation or Correction of the Defendant's Website Prior to Filing Her Action

Plaintiff's First Cause of Action should also be dismissed because the First Amended Complaint does not allege that she or her counsel provided the Defendant with notice of her visual impairment and the barriers she allegedly encountered on the Defendant's website, and requested that such barriers be fixed to accommodate her needs. The First Amended Complaint also does not allege that the Defendant denied any such request, particularly since Plaintiff made no such request and, instead, rushed to file this lawsuit. *Cf. Castillo v Hudson Theatre, LLC*, 412 F Supp 3d 447 [SDNY 2019] (dismissing Title Ill ADA claim and explaining that "[a] Plaintiffs request for a reasonable modification is necessary to determine whether the defendant could reasonably provide such modification and whether the defendant's subsequent failure to do so constitutes discrimination," and the failure to allege such a request rendered Plaintiff's allegations "merely conclusory"); *see also Sullivan v Bdg Media*, 71 Misc 3d 863 [Sup Ct, NY County 2021]); *see Colón v Puerto Rico Convention Ctr. Dist. Auth.*, 2023 US Dist LEXIS 162459 (D.PR).

**PLAINTIFF'S NEW YORK STATE AND NEW YORK CITY CAUSES OF ACTION SHOULD BE DISMISSED FOR THE SAME REASONS THIS COURT SHOULD DISMISS PLAINTIFF'S ADA CLAIM**

The same legal standards for standing and stating an ADA claim under Rule 12(b)(l) and 12(b)(6) apply to the Plaintiff's New York State Human Rights Law, the New York State Civil Rights Law, and New York City Human Rights Law claims (Plaintiff's Second through Fourth Causes of Action). Thus, the Court should dismiss these claims for the same reasons discussed above for dismissing the ADA claim. *See, e.g., Graves v Finch Pruyn & Co.*, 457 F3d 181 [2d Cir 2006] ("a [New York] state-law disability-discrimination claim . . . survives or fails on the same basis as [Plaintiffs] ADA claim"); *(Mendez v Apple Inc.*, 2019 US Dist LEXIS 110640 [SDNY] (concluding that New York City Human Rights Law and New York City Civil Rights Law claims are governed by same standing requirements as ADA claims, and dismissing the NYCHRL and NYCHRL claims for lack of standing after dismissing the ADA claim on the same basis).

**POINT V**

**THE COURT SHOULD DISMISS FIFTH CAUSE OF ACTION AS AND FOR DECLARATORY RELIEF**

Plaintiff asserts a "claim" for declaratory relief based on her allegation that the Defendant's website violates the ADA and various New York State and New York City laws. Specifically, the Plaintiff seeks, in her Fifth Cause of Action, a declaration that the Defendant "owns, maintains, and/or operates its website in a manner that discriminates against the blind". This cause of action seeking declaratory relief should be dismissed for the reasons set forth above, and also because it is duplicative of Plaintiff's other claims and would serve no purpose. *See, e.g., Calcano*, *supra* (dismissing blind and visually-impaired Plaintiffs ADA, NYSHRL and

NYCHRL claims for lack of standing and failure to state a claim and dismissing claim for declaratory relief as "duplicative of his other claims"); *MS Fed. Acquisition, LLC v U.S. Bank Nat'l Ass'n*, 2015 US Dist LEXIS 95152 [SDNY] (dismissing claim for declaratory relief under Rule 12(b)(6) because "the declaratory relief sought by the Plaintiffs would not serve a useful purpose in clarifying or settling the legal issues involved in this case".

## POINT VI

### IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S NEW YORK STATE AND NEW YORK CITY CAUSES OF ACTION

If this Court dismisses Plaintiff's First Cause of Action, which is brought pursuant to the ADA, but not Plaintiff's New York State and New York City causes of action, it should nevertheless decline to exercise supplemental jurisdiction over the Plaintiff's New York State and New York City causes of action.

A federal district court may decline to exercise supplemental jurisdiction over a state law claim once the district court has dismissed all claims over which it has original jurisdiction. (28 USCS § 1367); *see Tavarez v. Extract Labs, Inc, supra.* In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v Cohill*, 484 US 343 [1988], 350, n. 7, (1988).

For those reasons, district courts in the Second Circuit quite commonly dismiss New York State and New York City accessibility claims after dismissing the federal ADA claim. *See, e.g. Jaquez v Aqua Carpatica USA, Inc.*, 2021 US Dist LEXIS 157918 [SDNY] (declining to exercise jurisdiction and therefore dismissing NYCHRL claim after dismissing the visually-impaired plaintiff's ADA claim for lack of standing at the outset of the case); (*Phillips v 180*

16

*Bklyn Livingston, LLC*, 2017 US Dist LEXIS 75154 [EDNY] (concluding that the defendant restaurant and defendant landlord were taking steps to fix the alleged "inaccessibility issues, thus vitiating the ADA's jurisdictional hook" and dismissing the state law NYCHRL, NYSHRL and negligence claims because "the compelling reason to decline supplemental jurisdiction as presented by this case is the prevention of the misuse and exploitation of the ADA in a way that directly contravenes Congressional intent and the remedial nature of the ADA. Congress consciously chose not to permit money damages in ADA actions such as this one, and tacking on state claims that permit damages is effectively creating an end-run on the ADA's purpose and Congress's intent.").

For the reasons set forth herein, the Court should decline to exercise supplemental jurisdiction over, and dismiss, the NYCHRL claim.

## CONCLUSION

For the reasons set forth herein, this Court should issue an Order (a) dismissing Plaintiff's First Amended Complaint in its entirety, (b) in the alternative, dismissing the Plaintiff's First Cause of Action, and any other causes of action it concludes should be dismissed, and declining to exercise supplemental jurisdiction over Plaintiff's other causes of action, and (c) granting this Defendant such other and further relief as may be deemed just and proper.

Respectfully submitted,

David S. Feather