**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NIHAL ERKAN, on behalf of himself and all    :    Civil Case No.: 23-cv-09553-FB-LKE
others similarly situated,                       :

                           :

             Plaintiffs,         :

                           :

      v.                       :

                           :

DAVID A. HIDALGO, M.D, P.C.,         :

                           :

           Defendant.        :

                           :

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Pages**

I.  STATEMENT OF FACTS………………………………………………… 1

II.  LEGAL STANDARDS….……………………………………………… 2

   A.  Standard of Review on a Rule 12(b)(1) Motion to Dismiss……………….....3

   B.  The Use of Extrinsic Evidence in Deciding a Rule 12(b)(1) Motion to
      Dismiss………………………………………………..……………………...3

   C.  Standard of Review on a Rule 12(b)(6) Motion to Dismiss………………...4

III.  ARGUMENT………………………………………………………………5

   A.  Defendant's Argument for Dismissal Under F.R.C.P. 12(b)(1)………... 5

        1.  The Amended Complaint sufficiently
           alleges grounds for standing, including an intent to return….…...5

        2.  Defendant's arguments address a
           threshold that is no longer applicable……………………………..8

        3.  Defendant's reference to Plaintiff's
           litigation activity unrelated to the case at hand is unavailing……..9

        4.  Defendant's factual Rule 12(B)(1) challenge fails………………13

           a.  The Matter is Not Moot……………………….…………..13

           b.  Defendant's extrinsic evidence is ineffective………………..15

   B.  Defendant's Argument for Dismissal Under F.R.C.P. 12(b)(6)…………...18

        1.  Defendant violated the ADA by
           failing to make its Website accessible to Plaintiff
           and other visually-impaired consumers…………………………19

         2.  Defendant's Website is
            a place of public accommodation under relevant law…………..20

        3.  Whether Plaintiff requested an accommodation
           before filing the instant lawsuit is irrelevant…………………….22

   C.  Defendant's Remaining Arguments for Dismissal of Plaintiff's
      State Law Claims, City Law Claims, and Declaratory Relief……………23

IV.  CONCLUSION……………………………………...……......……………23

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*303 Creative LLC v. Elenis,*
*600 U.S. 570 (2023)……………………………………………………………………*8, 9

*Adams v. 46 N LLC,*
*2023 U.S. Dist. LEXIS 29696 (S.D.N.Y. Feb. 22, 2023) …………………………………* 11

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
*643 F3d 1165 (9th Cir 2010) ……………………………………………………………* 12

*Ashcroft v. Iqbal,*
*129 S. Ct. 1937 (2009) ……………………………………………………………………*4

*Bell Atl. Corp. v. Twombly,*
*550 U.S. 544, 570 (2007) ……………………………………………………………..…* 4

*Broad Music, Inc. v. My Image Studios LLC,*
*2020 U.S. Dist. LEXIS 78476 (S.D.N.Y. May 4, 2020) …………………………………*15

*Cagan v. Gadman,*
*2012 U.S. Dist. LEXIS 162053 (E.D.N.Y. Oct. 31, 2012) ………………………………..*16

*Calcano v. Swarovski N. Am. Ltd.,*
*36 F.4th 68 (2d Cir. 2022) ………………………………… …………………………*5, 6, 8, 9

*Camacho v. Vanderbilt Univ.,*
*2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) …………………………………* 6, 10

*Carter v. HealthPort Techs., LLC,*
*822 F.3d 47 (2d Cir. 2016) ………………………………………………………..…..* 3, 15

*Chalas v. Pork King Good,*
*673 F. Supp. 3d 339 (S.D.N.Y. 2023) …………………………………………………* 21

*Chavez v. L2 Liu, 2021 U.S. Dist. LEXIS 37700,*
*2021 WL 1146561 (E.D.N.Y. Feb. 26, 2021) ………………………………..…………* 10

*City Bank Farmers' Trust Co. v. United States,*
*5 F. Supp. 871 (S.D.N.Y. 1934) …………………………………………………..……* 11

*Cruz v. Wide Open Arts, LLC,*
*2023 U.S. Dist. LEXIS 141921 (E.D.N.Y. August 14, 2023) …………………..……* 9

*CRUZ V. WIDE OPEN ARTS, LLC,*
*2023 U.S. DIST. LEXIS 173357 (E.D.N.Y., SEPT. 26, 2023)* ………………………….9

*DABIT V. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,*
*395 F.3D 25, 31 (2D CIR.)*……………………………………………………………4

*D'LIL V. BEST W. ENCINA LODGE & SUITES,*
*538 F.3D 1031 (9TH CIR. 2008)* ………………………………………………… 12

*DANZER V. NORDEN SYSTEMS, INC.,*
*151 F.3D 50, 57 (2D CIR. 1998)* ………………………………………………… 16

*DAVIS V. WILD FRIENDS FOODS, INC.,*
*2023 U.S. DIST. LEXIS 115542 (SDNY JULY 5, 2023)* …………………………… 8, 10, 12, 22

*DEL-ORDEN V. BONOBOS, INC.,*
*2017 U.S. DIST. LEXIS 209251 (S.D.N.Y. DEC. 20, 2017)* ……………………….21

*DELACRUZ V. RUBY TUESDAY, INC.,*
*2020 U.S. DIST. LEXIS 163969, 2020 WL 5440576 (S.D.N.Y. SEPT. 8, 2020)* ……… 11

*DELUCA V. BANK OF TOKYO-MITSUBISHI UFJ, LTD.,*
*2008 U.S. DIST. LEXIS 25916 (S.D.N.Y. MARCH 29, 2008)* …………………… ...16

*DOMINGUEZ V. BANANA REPUBLIC, LLC,*
*613 F. SUPP. 3D 759 (S.D.N.Y. 2020)* ………………………………………………22

*DONET V. ISAMAX SNACKS, INC.,*
*2023 U.S. DIST. LEXIS 141913 (S.D.N.Y. AUGUST 14, 2023)* ………………… 23

*DONET V. ISAMAX SNACKS, INC.,*
*2023 U.S. DIST. LEXIS 165122 (S.D.N.Y., SEPT. 18, 2023)* …………………… 23

*ECD INV. GROUP,*
*2017 U.S. DIST. LEXIS 138066*………………………………………………… 16

*EMILEE CARPENTER, LLC V. JAMES,*
*2024 U.S. APP. LEXIS 17099 (2024)* ………………………………………… 9

*EXCHANGE NATIONAL BANK OF CHICAGO V. TOUCHE ROSS & CO.,*
*544 F.2D 1126 (2D CIR. 1976)* ……………………………………………… 4

FED. DEFS. OF NEW YORK, INC. V. FED. BUREAU OF PRISONS,
954 F.3D 118 (2D CIR. 2020)……………………………………………15

GENTILE V. NCSPLUS INC.,
2024 U.S. DIST. LEXIS 93347 (S.D.N.Y. MAY 24, 2024)……………………………………16, 17

GREGORY V. DALY,
243 F.3D 687 (2D CIR. 2001) …………………………………………………… 2

GUERRERO V. OGAWA USA INC.,
2023 U.S. DIST. LEXIS 109579 (S.D.N.Y. JUNE 26, 2023) ………………………………… 11, 22

GUERRERO V. ELLUSIONIST.COM, INC.,
2023 U.S. DIST. LEXIS 97870 (S.D.N.Y. JUNE 6, 2023) ………………………………………… 21

HARTY V. W. POINT REALTY, INC.,
28 F.4TH 435 (2D CIR. 2022)…………………………………………………………………19

HARRY V. TOTAL GAS & POWER N. AM., INC.,
889 F.3D 104 (2D CIR. 2018)……………………………………………………………………3

HECHT V. MAGNANNI INC.,
2022 U.S. DIST. LEXIS 60836 (S.D.N.Y. 2022) ………………………………………… 14, 15

JACKSON V. NEW YORK,
381 F. SUPP. 2D 80 (N.D.N.Y 2005) ………………………………………………………… 5

KAMEN V. AMERICAN TEL. & TEL. CO.,
791 F.2D 1006 (2D CIR. 2016) ………………………………………………………… 4, 15

KREISLER V. SECOND AVE. DINER CORP.,
731 F.3D 184 (2D CIR. 2013) ………………………………………………………… 11

LESAVOY V. GATTULLO-WILSON,
170 FED. APPX. 721 (2D CIR. 2006)……………………………………………………3, 4

LIN KWOK KEUNG V PATISSERIES SAINES CORP.,
2023 US DIST. LEXIS 120258 (S.D.N.Y. JULY 12, 2023) ………………………………… 10

LOADHOLT V. SHIRTSPACE,
2023 U.S. DIST. LEXIS 36924 (S.D.N.Y. MAR. 6, 2023) ……………………………........ 6-9

MAKAROVA V. UNITED STATES,
201 F.3D 110 (2D CIR. 2000) ………………………………………………………… 3

MARTINEZ V. GUTSY LLC,
2022 U.S. DIST. LEXIS 214830 ………………………………………………………… 20

PGA Tour, Inc. v. Martin,
532 U.S. 661 (2001)……………………………………………………….6

Pinkhasov v. Vernikov,
2024 U.S. Dist. LEXIS 87774…………………………………………………..14

Romero v. 88 Acres Foods, Inc.,
580 F. Supp. 3d 9 (S.D.N.Y. 2022) ………………………………………… 20

Sanchez v. NutCo, Inc.,
2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) …………………………… 6, 9

Starr v. Sony BMG Music Entertainment,
592 F.3d 314, 321 (2d. Cir. 2010) ……………………………………………… 4

Tavarez v. Moo Organic Chocolates, LLC,
2022 U.S. Dist. LEXIS 154249 (S.D.N.Y. Aug. 26, 2022) ………………………… 21

Thorne v. Capital Music Gear LLC,
2024 U.S. Dist. LEXIS 67366 (S.D.N.Y. April 17, 2024)………………………………7, 8, 14

Todd v. Exxon Corp.,
275 F.3d 191 (2d Cir. 2001)………………………………………………4

Wahad v. F.B.I.,
179 F.R.D. 429 (S.D.N.Y. 1998) …………………………………… 16

Walters v. Fischer Skis U.S., LLC,
2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) ………………………… 20

Watts v. Jackson Hewitt Tax Serv. Inc.,
579 F. Supp. 2d 334 (E.D.N.Y. Aug. 16, 2008) ………………………………… 4

Winans v. Ornua Foods N. Am. Inc.,
2024 U.S. Dist. LEXIS 73887 (E.D.N.Y. April 23, 2024)…………………………………2

Winegard v. Newsday,
556 F. Supp. 3d 173 (E.D.N.Y. 2021) ……………………………………… 20

Woods v. Maytag Co.,
807 F. Supp. 2d 112 (E.D.N.Y. 2011) ………………………………………… 4

Young v. Metro. Learning Inst., Inc.,
2023 U.S. Dist. LEXIS 23206 (S.D.N.Y. Feb. 10, 2023) …………………………………… 19

Plaintiff NIHAL ERKAN ("Plaintiff") respectfully submits this memorandum of law in opposition to DAVID A. HIDALGO, M.D, P.C.'s ("Defendant") motion to dismiss and supporting documents ("Motion to Dismiss").[1]

## I.      STATEMENT OF FACTS

The Amended Complaint clearly alleges the following: Defendant is a retail company that owns and operates the website www.drdavidhidalgo.com (the "Website"), through which Defendant offers information and services in connection with their physical plastic surgery office. Amended Complaint at ¶¶ 4, 18, 24-26.

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to properly utilize a computer to access the internet. Amended Complaint at ¶ 2. Plaintiff discovered Defendant's Website while looking to make a consultation appointment with a facial plastic surgeon in hopes of getting a facelift procedure. Amended Complaint at ¶ 10.

Plaintiff attempted to access Defendant's Website several times, including, without limitation, on November 9, 2023, November 10, 2023, March 30, 2024, and June 1, 2024. Amended Complaint at ¶ 37. Plaintiff accessed Defendant's Website in order to, *inter alia*, learn more information about the goods and services offered by Defendant. Amended Complaint at ¶ 36. However, due to the existence of access barriers on the Website, as further alleged in the Amended Complaint, Plaintiff was unable to properly navigate the website independently despite her numerous attempts. *See, e.g.,* Amended Complaint at ¶¶ 18, 35, 37, 41. Specifically, when visiting the Website, Plaintiff encountered specific accessibility issues that are enumerated in detail in the Amended Complaint and incorporated by reference herein (collectively, the "Access Barriers"). *See* Amended Complaint at ¶ 32.

The Access Barriers deny full and equal access to Plaintiff, who would otherwise use the

---

[1] As used in this motion, the term "Amended Complaint" refers to the First Amended Class Action Complaint filed in this action on June 13, 2024 (ECF No. 14), and "Def. Memorandum" refers to Defendant's Memorandum of Law in Support of Motion to Dismiss the First Amended Complaint.

Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website. *See, e.g.,* Amended Complaint at ¶ 35-36.

Moreover, the Amended Complaint clearly alleges that Plaintiff will visit the Website immediately upon Defendant correcting the numerous accessibility barriers on the Website, and will continue to attempt to successfully access the Website going forward in order to get the necessary information needed to make an appointment for a consultation for Defendant's services. Amended Complaint at ¶ 38. Plaintiff is the exact target demographic of patients that Defendant's facial plastic surgery office offers services to, and Plaintiff's home in Long Island City in Queens, New York is a short fifteen-minute car ride to Defendant's office, which would make Defendant's services for a facelift and other facial aesthetic procedures very convenient for Plaintiff. Amended Complaint at ¶ 38. Plaintiff is still actively soliciting the services of facial plastic surgeons, however it is difficult to find a doctor, like the one in Defendant's office, who are reputable, close to her home, and offer the exact procedures she intends on getting. Amended Complaint at ¶ 39.

Based on this, the Amended Complaint adequately alleges (i) Defendant's violations of 42 U.S.C. § 12181 *et seq*. –Title III of the Americans with Disabilities Act (First Cause of Action); (ii) Defendant's violations the New York State Human Rights Law, N.Y. Exec. Law Article 15 (the "NYSHRL") (Second Cause of Action); (iii) Defendant's violations of Article 4 of the New York State Civil Rights Law (the "NYSCRL") (Third Cause of Action); and (iv) Defendant's Violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-102, *et seq*. (the "NYCHRL") (Fourth Cause of Action). Additionally, the Complaint seeks Declaratory Relief related to such violations (Fifth Cause of Action).

## II.  <u>LEGAL STANDARD</u>

First and foremost, the Second Circuit cautions district courts from hastily dismissing complaints of civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

## A. Standard of Review on a Rule 12(b)(1) Motion to Dismiss

"On a motion to dismiss under Rule 12(b)(1), while the Court accepts all factual allegations in support of a plaintiff's standing as true, the plaintiff bears the burden of establishing standing and must allege enough facts to make it plausible to conclude that the plaintiff has standing." *Winans v. Ornua Foods N. Am. Inc.*, 2024 U.S. Dist. LEXIS 73887, *2 (E.D.N.Y. April 23, 2024) (Block, J.) (citing *Lesavoy v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018). Granting dismissal under Rule 12(b)(1) is appropriate only "when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Further, a 12(b)(1) challenge limits a court's ability to dismiss a case with prejudice. "[W]e note that where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice. Such a dismissal is one for lack of subject matter jurisdiction, and without jurisdiction, the district court lacks the power to adjudicate the merits of the case. Accordingly, where there is a lack of Article III standing, Article III deprives federal courts of the power to dismiss a case with prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (*citations and quotations omitted*).

## B. The Use of Extrinsic Evidence in Deciding a Rule 12(b)(1) Motion to Dismiss

As further recounted by the Second Circuit in *Carter v. HealthPort*:

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden. . . . Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading. In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction. . . . If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing.

822 F.3d 47, 56-57 (citations and quotations omitted). The evidence raised in support of a factual Rule 12(b)(1) challenge "may be presented by affidavit or otherwise" and "Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings." *Kamen v. American Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 2016) (*citing Exchange National Bank of Chicago v. Touche Ross & Co*., 544 F.2d 1126, 1130-31 (2d Cir. 1976). "Similarly, courts have required that evidence submitted outside the pleadings be 'competent.'" *Kamen*, 791 F.2d at 1011.

### C. Standard of Review on a Rule 12(b)(6) Motion to Dismiss

In order to survive a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co*., 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft*, S. Ct. at 1950).

Dismissal is only proper under Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claims which would entitle the plaintiff to relief. *See Lesavoy v. Gattullo-Wilson*, 170 Fed. Appx. 721, 722 (2d Cir. 2006) (*citing Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 395 F.3d 25, 31 (2d Cir.), cert. granted, 126 S. Ct. 34, 162 L. Ed. 2d 932 (2005)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (*citing Todd v. Exxon Corp*., 275 F.3d 191, 198 (2d Cir. 2001)).

Accordingly, a plaintiff need only assert factual allegations sufficient "to raise a right to relief above the speculative level" to defeat a Rule 12(b)(6) motion. *See Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d. Cir. 2010); *see also Watts v. Jackson Hewitt Tax Serv. Inc*.,

579 F. Supp. 2d 334, 343-44 (E.D.N.Y. Aug. 16, 2008) (quoting *Twombly*, 127 S. Ct. at 1955). Therefore, a motion to dismiss under Rule 12(b)(6) may be granted only if a court finds that Plaintiffs failed to set forth fair notice of what the claim is and the grounds upon which it rests. *See Twombly*, 127 S. Ct. at 1964. Motions to dismiss for failure to state a claim are "generally viewed with disfavor, and the standard for dismissal under Rule 12(b)(6) is quite narrow." *Jackson v. New York*, 381 F. Supp. 2d 80, 84 (N.D.N.Y 2005).

## III.    **ARGUMENT**

### A.  **Defendant's Argument for Dismissal Under F.R.C.P. 12(b)(1)**

Defendant first argues that this Court lacks subject matter jurisdiction because Plaintiff lacks standing. Defendant's argument rests on two separate grounds, raising both a facial and fact-based jurisdictional challenge: (i) that Plaintiff has failed to sufficiently allege standing, and (ii) that Defendant's evidence submitted in support of Defendant's motion to dismiss conflict with Plaintiff's allegations. Both arguments will be addressed in turn.

1.  The Amended Complaint sufficiently alleges grounds for standing, including an intent to return.

Defendant first takes issue with Plaintiff's allegations concerning an intent to return. Def. Memo. at 6. Defendant cites to the Second Circuits decision in *Calcano v. Swarovski N. Am. Ltd.* in that the "central inquiry" of the intent to return analysis is "not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." Def. Memo. at p. 6 (*citing Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 75 (2d Cir. 2022)). Defendant then cites to a series of decisions in an attempt to establish that "[f]ollowing *Calcano*, district courts in the Second Circuit have dismissed ADA website claims regarding website accessibility similar to the one at bar for lack of standing when those matters simply state conclusory allegations similar to what Plaintiff states here, without the requisite specificity required by *Calcano*. Def. Memo. at pp.

6-7.

Firstly, the allegations in the Amended Complaint meet Plaintiff's burden, especially at this stage of the litigation, as demonstrated by caselaw decided even in in light of the *Calcano v. Swarovski* decision.

In *Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, *5-6 (S.D.N.Y. Mar. 6, 2023) the court found that "[p]laintiff has satisfied his burden of demonstrating standing. . . .Here, [p]laintiff alleges that he tried to access the website in order to buy a T-shirt[,] claims that he was unable to navigate the website and describes in detail the accessibility barriers that prevented him from doing so[,] [and] also alleges what days he tried to access the website: March 24 and June 16, 2022. . . Additionally, Plaintiff alleges that he intends to revisit the website in the future and alleges that Defendant has not remedied the accessibility issues on the website." In assessing the intent to return analysis, the court further held the following:

> Here, the allegations, read in totality, sufficiently demonstrate Plaintiff's intent to return to Defendant's website. Plaintiff already returned once to the website on June 16, 2022 to try to complete his T-shirt purchase. Plaintiff alleges that he "would still like to return to the Website to browse and potentially purchase several T-shirts once it is made accessible to him, and intends to do so once the site is made accessible." Thus, Plaintiff has satisfied the Second Circuit's requirements by specifying when he intends to return to the website (*i.e.*, when the alleged accessibility issues are remediated) and for what purpose (*i.e.*, to purchase the T-shirt he originally tried to buy). This is sufficient to evince Plaintiff's intent to return to the website for the standing analysis. *Camacho v. Vanderbilt Univ.*, No. 18-CV-10694 (KPF), 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at *10 (S.D.N.Y. Dec. 4, 2019). This is consistent with the "broad mandate" of the ADA, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001), to ensure that disabled people are able to "fully participate in all aspects of society..." 42 U.S.C. § 12101(a)(1).

> Accordingly, the Court finds that Plaintiff has pleaded sufficient facts to establish standing and thus Defendant's motion to dismiss pursuant to Rule 12(b)(1) is DENIED.

*Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *7-8; *see also Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247, at *6-7 (S.D.N.Y. Mar. 22, 2022) (finding that the plaintiff alleged

facts that allow a reasonable inference that he intended to return to the subject website, where the complaint alleged that (i) the plaintiff unsuccessfully tried to navigate the subject website; (ii) the subject website's barriers deterred the plaintiff from visiting the website in the future; and (iii) the plaintiff intended to visit the site again in the future when the barriers are cured). Accordingly, the Amended Complaint more than sufficiently alleges the Plaintiff suffered an injury-in-fact, and Defendant's arguments to the contrary fail.

Defendant cites, in particular, to "the recent case of *Thorne v. Capital Music Gear LLC*, 2024 U.S. Dist. LEXIS 67366 [SDNY]," where, Defendant contends, "the plaintiff alleged that he had visited the defendant's website on 'several occasions,' but failed to state with any detail why he was attracted to defendants' products, or why this particular website appealed to him. Plaintiff therein further asserted that he intended to revisit the website to purchase drumsticks from defendant as soon as the access barriers were removed from the website. The Court held that this formulaic recitation of the required standing element without addition explanation was insufficient, and dismissed the lawsuit based on lack of standing." *See* Def. Mem. at p. 8.

But Defendant fails to note the obvious distinction between *Thorne*, and the case at hand, which is recognizable even on the face of Defendant's summary. Here, Plaintiff clearly alleged more than just that Plaintiff had "visited the defendant's website on 'several occasions,' alleging specific facts about the exact timing of the attempted visits at issue. *See, e.g.,* Amended Complaint at ¶ 37 (alleging that Plaintiff attempted to access Defendant's Website several times, including on November 9, 2023, November 10, 2023, March 30, 2024, and June 1, 2024). Further, Plaintiff has clearly alleged detail as to why Plaintiff was attracted to Defendant's websites and services. *See, e.g.,* Amended Complaint at ¶ 10 (alleging that Plaintiff discovered Defendant's Website while looking to make a consultation appointment with a facial plastic surgeon in hopes of getting a facelift procedure); *see also* Amended Complaint at ¶ 38-39 (alleging that (i) Plaintiff is still actively soliciting the services of facial plastic surgeons, however it is difficult to find a doctor,

like the one in Defendant's office, who are reputable, close to her home, and offer the exact procedures she intends on getting, (ii) Plaintiff is the exact target demographic of patients that Defendant's facial plastic surgery office offers services to, and (iii) Plaintiff's home in Long Island City in Queens, New York is a short fifteen-minute car ride to Defendant's office, which would make Defendant's services for a facelift and other facial aesthetic procedures very convenient for Plaintiff).

Accordingly, the decision in *Thorne v. Capital Music Gear LLC* is clearly distinguishable, as is recognized by the court in the *Thorne* decision itself. *See Thorne*, 2024 U.S. Dist. LEXIS 67366 at *13-14 (distinguishing the case before it from *Davis v. Wild Friends Foods, Inc*., 2023 U.S. Dist. LEXIS 115542, at *1 and noting that the *Davis* decision "[held] as sufficient to show an intent to return allegations that plaintiff sought out defendant's healthy snack spread products because '[p]laintiff enjoys honeyed butter, is generally  interested in organic foods as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food,' and additionally defendant's "honey sunflower butter is marketed as allergen friendly and a healthier eating option and does not contain excess sugar or palm oil in its recipe"). Here, like in *Davis v. Wild Friends Foods*, Plaintiff has alleged sufficient grounds to establish an intent to return.

But setting all that aside, Defendant's argument still fails.

## 2. Defendant's arguments address a threshold that is no longer applicable.

Defendant's analysis is misplaced. Defendant argues that the Amended Complaint falls short of the necessary standard on the basis of an alleged failure to properly allege a sufficient intent to return, which, in turn, is dependent on "a real and immediate threat of future injury." Def. Memo. at p. 6 (*citing Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 75 (2d Cir. 2022)). But Defendant's argument relies on analysis that is no longer the applicable standard:

> It bears noting that the 'credible threat' standard recently articulated by the Supreme Court in *303 Creative v. Elenis* appears to lower the bar for a plaintiff to establish standing. [600 U.S. 570]. The previous standard was whether, 'examined under the

> 'totality of all relevant facts,'' the plaintiff plausibly alleged 'a real and immediate threat of future injury.' *Calcano*, 36 F.4th at 74 (citation and internal quotation marks omitted). *303 Creative* changes the inquiry to whether a plaintiff faces a credible threat of discrimination in the future, rather than requiring a real and immediate threat of future injury. Under the credible threat standard, plaintiff has clearly established standing, as she states that she intends to visit the [w]ebsite in the future and the [w]ebsite contains numerous accessibility issues.

*Cruz v. Wide Open Arts, LLC*, 2023 U.S. Dist. LEXIS 141921, *4 (E.D.N.Y. August 14, 2023) (*adopted by Cruz v. Wide Open Arts, LLC*, 2023 U.S. Dist. LEXIS 173357 (E.D.N.Y., Sept. 26, 2023). Indeed, the "credible threat" pleading standard has been adopted by the Second Circuit. *See Emilee Carpenter, LLC v. James*, 2024 U.S. App. LEXIS 17099, *12 (agree with the district court that the complaint at issue "has plausibly alleged an injury in fact for the purpose of standing" where a credible threat was pleaded). Here, where Plaintiff has alleged facts that show Plaintiff's intent to visit Defendant's premises and that Plaintiff intends to visit the Website in the future but that the Website's Access Barriers will continue to prevent access until cured, Plaintiff has clearly plead a credible threat.

Thus, Plaintiff has standing, given the analysis made in consideration of *Calcano* in case law such as *Loadholt v. ShirtSpace* (*supra*) and *Sanchez v. NutCo, Inc.* (*supra*), the judicial effect of the Supreme Court decision in *303 Creative*, and the Second Circuit's subsequent application of such judicial effect.

3. <u>Defendant's reference to Plaintiff's litigation activity unrelated to the case at hand is unavailing.</u>

Defendant cites, in passing, to Plaintiff's litigation activity unrelated to the case at hand, arguing that "[the fact that Plaintiff] has filed fifty (50) other nearly identical complaints against websites in this district in the last eight-and-a-half months further undermines the sincerity of her conclusory allegation that she intends to intent to return to [the Website], and further reinforces the conclusion that she actually has no plausible intent to do so." *See* Def. Memo. at p. 9. But this argument should fail as well.

First, Defendant fails to mention the numerous cases post-*Calcano* in which courts have

*denied* arguments set forth by defendants attempting to leverage the frequency of the plaintiff's

filing of ADA cases. For example, as stated by Judge Lewis J. Liman in the recent case *Davis v.*

*Wild Friends Foods, Inc.*:

> In its motion to dismiss for lack of standing, Defendant argues that "Plaintiff is a professional litigant who sues website owners that caused him no actual harm" and "[i]n his capacity as a tester, Plaintiff has filed over fifty nearly identical complaints in which he makes identical allegations about how he supposedly attempted to patronize websites but was denied access." Defendant contends that, given this litigation history, Plaintiff's allegations that he intended to purchase goods on the Website should not be credited and accordingly Plaintiff has not plausibly alleged an injury in fact. . . . Because a plaintiff's tester status does not preclude standing under the ADA, the fact that the Plaintiff in this case may be an ADA tester is not dispositive. Neither is the fact that Plaintiff may have, as Defendant claims, filed fifty nearly identical complaints. ***The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites. This fact alone therefore does not make Plaintiff's allegations of standing any more or less plausible.*** *See Chavez v. L2 Liu*, 2021 U.S. Dist. LEXIS 37700, 2021 WL 1146561, at *3 (E.D.N.Y. Feb. 26, 2021) (concluding that plaintiff established standing despite the fact that the case was "one of the twelve nearly identical cases plaintiff has filed in the Eastern District of New York"); *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at *29 (S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss for lack of standing even "accept[ing] [d]efendant's representation that Plaintiff filed 50 other complaints containing similar, if not identical, allegations against other institutions of higher learning").

2023 U.S. Dist. LEXIS 115542, at *8-11 (S.D.N.Y. July 5, 2023) (*emphasis added*); *see also Lin*

*Kwok Keung v Patisseries Saines Corp.*, 2023 US Dist. LEXIS 120258, at *16 (S.D.N.Y. July 12,

2023) (finding "[r]egardless of whether other parts of the [c]omplaints in this case are 'cookie

cutter' when compared to prior filings by [the plaintiff], the allegations, which identify particular

areas of the bakery that allegedly are not ADA-compliant with citations to the relevant regulations,

are sufficient to plausibly allege violations of the ADA" and noting "the contours of ADA-standing

in this Circuit post-*Calcano*, which was decided just over one year ago, are still being developed”); *Guerrero v. Ogawa USA Inc*., 2023 U.S. Dist. LEXIS 109579, at *8-9 (S.D.N.Y. June 26, 2023) (“Filing serial, formulaic complaints may, in practice, sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss. But that fact does not entitle [p]laintiff to a weaker presumption that the non-conclusory allegations in the FAC are true”) (*citing Delacruz v. Ruby Tuesday, Inc*., 2020 U.S. Dist. LEXIS 163969, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020)); *Adams v. 46 N LLC*, 2023 U.S. Dist. LEXIS 29696, at *12 (S.D.N.Y. Feb. 22, 2023) (“Affording undue weight to [p]laintiff's past litigation tactics for pursuing ADA claims would run counter to the ‘remedial purpose’ of the ADA to ‘eliminate discrimination against disabled individuals’”) (*citing Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 189 (2d Cir. 2013)).

Indeed, Defendant's argument ignores the now-proven ubiquitous nature of the internet and online shopping in the average consumer's daily life,[2] the convenience it brings (especially to those that are visually impaired), and the injury that would be experienced if, again and again, one's ability to benefit from such convenience was cut short due to access barriers. If anything, Plaintiff's “serial” litigation history is evidence of the systemic disregard for visually impaired consumers that, unfortunately, is widespread throughout the internet and e-commerce platforms.

Plaintiff, as a visually impaired consumer, was afforded certain rights under the ADA. Those rights were violated by Defendant, as they were a number of times in the past by other corporate

---

[2] For example, according to the Census Bureau of the U.S. Department of Commerce, the estimate of U.S. retail e-commerce sales for the second quarter of 2023 (adjusted for seasonal variation, but not for price changes) was $277.6 billion, an increase of 2.1 percent (±0.9%) from the first quarter of 2023, while E-commerce sales in the second quarter of 2023 accounted for 15.4 percent of total sales. *See* https://www.census.gov/retail/mrts/www/data/pdf/ec_current.pdf (last visited September 12, 2023). The Court can take judicial notice of government statistics. Victoria Cruises, Inc. v. Yangtze Cruises, Inc. (E.D.N.Y. 2008) 630 F.Supp.2d 255, 263, fn. 3 (*citing United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996) (taking judicial notice of census data compiled by the United States Department of Commerce); *City Bank Farmers' Trust Co. v. United States*, 5 F. Supp. 871, 873 (S.D.N.Y. 1934) (taking judicial notice of statistics published by Commerce Department); Fed. R. Evid. 201).

entities that failed to ensure compliance with the ADA. Plaintiff's attempts at enforcing those rights in the past should not harm Plaintiff's standing to do so here. Stated differently, *Plaintiff has a right to raise a lawsuit in response to every instance in which Plaintiff's rights as a visually-impaired consumer has been violated.* If Plaintiff's rights are continuously violated by multiple parties, including Defendant, Plaintiff is entitled to protect Plaintiff's rights against every such Defendant, including Defendant. Defendant may not like this fact, but that does not lessen Plaintiff's right or raise the applicable legal standard.

It is for this very reason that Congress first enacted the ADA: to afford *continuing* protection of people with disabilities. Accordingly, "[c]ourts must tread carefully before construing a Disability Act plaintiff's history of litigation against him. As we have noted more than once, '[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the [Disabilities Act]…' We must therefore be 'particularly cautious' regarding 'credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation.'" *Antoninetti v. Chipotle Mexican Grill, Inc*., 643 F3d 1165, 1175 (9th Cir 2010) (*citing D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008)).

In sum, ample caselaw supports the sufficiency of pleadings in this case for purposes of subject matter jurisdiction, and the context of Plaintiff's litigation history only "[r]eflect the rampant nature of discrimination that persons with visual impairments face when using the internet." *Davis v. Wild Friends Foods, Inc*., 2023 U.S. Dist. LEXIS 115542, at *11. At the very least, Plaintiff's litigation history "does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the [Amended Complaint] are true." *Guerrero*, 2023 U.S. Dist. LEXIS 109579, at *8-9. Accordingly, the Amended Complaint sufficiently alleges the necessary basis for standing, and this Court should disregard Defendant's arguments otherwise.

4. Defendant's factual Rule 12(B)(1) challenge fails.

The second segment to Defendant's argument for dismissal under Rule 12(B)(1) is predicated on the Affidavit of David A. Hidalgo ("Dr. Hidalgo") submitted in support of the Motion to Dismiss (the "Hidalgo Affidavit"), which is, in turn, predicated on the Affidavit of Brandon Shaw ("Mr. Shaw") submitted in support of the Motion to Dismiss (the "Shaw Affidavit"). As will be demonstrated, both the Hidalgo Affidavit and the Shaw Affidavit are explicitly controverted by Plaintiff's expert evidence, and thus, Defendant's fact-based Rule 12(B)(1) challenge fails.

Without demonstrating Dr. Hidalgo's technical credentials necessary to make such determinations, the Hidalgo Affidavit, based on the Shaw Affidavit, that the Website "was substantially in compliance with WCAG 2.1, and thus the ADA, prior to Plaintiff's first visit to that website on November 9, 2023." *See* Hidalgo Affidavit at ¶ 7. The Hidalgo Affidavit then asserts "[a]s a result of their review and audit of the site upon the receipt of Plaintiff's Complaint, Advice Media made the website even more accessible and even easier to navigate for the visually-impaired and blind." *See* Hidalgo Affidavit at ¶ 8. The Hidalgo Affidavit then asserts "Mr. Shaw affirms that Advice Media will scan and evaluate the website monthly as part of a routine maintenance plan, and that any identified improvement opportunities will be implemented on that schedule." *See* Hidalgo Affidavit at ¶ 9.

a. *The Matter is Not Moot.*

This matter cannot be dismissed on the basis of mootness, as Defendant has not met the necessary burden:

> It is well settled that the voluntary cessation of allegedly unlawful conduct does not moot a case in which the legality of that conduct is challenged. That is, a defendant cannot automatically moot a case simply by ending its allegedly unlawful conduct once sued. The rationale for this exception to mootness is simple: Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. At bottom, the rule traces

13

to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.

Given this concern, the Supreme Court has explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. Under the voluntary cessation test. . . , to show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to its old ways. This test is a stringent one, and the defendant's burden is a heavy one.

*Pinkhasov v. Vernikov*, 2024 U.S. Dist. LEXIS 87774, *10-11 (citations omitted); *see also Hecht v. Magnanni Inc*., 2022 U.S. Dist. LEXIS 60836, *8 (S.D.N.Y. 2022) ("It is black-letter law that a 'voluntary cessation of challenged conduct does not ordinarily render a case moot. Rather, Plaintiff's request for injunctive relief under the ADA will only be deemed moot if the Defendant meets the 'formidable burden' of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur").

Here, Defendant has not met its formidable burden. Defendant's evidence, including an affidavit that is made by a party who has not been established as an expert in the fields relevant to determining the matters at issue, is expressly contradicted by Plaintiff's expert evidence showing otherwise. *See* Declaration of Robert D. Moody (the "Moody Decl.," a true and correct copy of which is attached here as Exhibit A) at, *e.g.*, ¶¶ 35, 39 (finding, *inter alia* that "[e]ven though Defendant has deployed an accessibility widget, running the widget as directed by Defendant did not resolve the underlying programmatic, design, and logic issues that plague this website" and "[g]iven all above the above and considering the issues identified, I can say with a high degree of scientific certainty that the [Website] has defects").

Accordingly, the "formidable burden" has not been met. Indeed, the decision in *Thorne v. Cap. Music Gear LLC* (on which Defendant relies for its own purposes) makes this clear, finding that "[b]ased on the [plaintiff's expert affidavit asserting] allegations of remaining barriers despite [d]efendant's arguments that all defects have been cured, [d]efendant has not met the 'formidable

burden' of making it 'absolutely clear' that the allegedly wrongful behavior has ceased and that it 'could not reasonably be expected to recur.'" *See Thorne*, 2024 U.S. Dist. LEXIS 67366, at *17-18 (*citing Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126-27 (2d Cir. 2020)); *see also Hecht*, 2022 U.S. Dist. LEXIS 60836 at *10 ("At bottom, there is a clear factual dispute regarding whether the changes the [d]efendant has implemented have successfully resolved [p]laintiff's allegations of non-compliance, and whether the changes would continue following a termination of this lawsuit. [The defendant] therefore does not carry its burden to show that this matter is moot. Accordingly, the Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction").

### b. *Defendant's extrinsic evidence is ineffective.*

The nature of Defendant's jurisdictional challenge also leaves Defendant without sufficient evidence to support its position. As quoted above from the Second Circuit, if the extrinsic evidence presented by a defendant in support of its factual Rule 12(b)(1) challenge "is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57. Further, "Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings," and "[c]ourts have required that evidence submitted outside the pleadings be 'competent.'" *Kamen*, 791 F.2d at 1011.

Here, both the Hidalgo Affidavit and the Shaw Affidavit, which contend that the Website was, *and now further is*, compliant with the ADA, are clearly controverted by Plaintiff's competing evidence. *See generally,* the Moody Decl. Accordingly, the "body of decisions under Rule 56" are the guidelines that this Court should use to make a factual determination of the issue.

Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, *and show that the affiant or declarant is competent to testify on the matters stated*" (emphasis

added). "When they fail to comply with these requirements, 'the offending portions should be disregarded by the court.'" *Broad. Music, Inc. v. My Image Studios LLC*, 2020 U.S. Dist. LEXIS 78476, *6 (S.D.N.Y. May 4, 2020) (*citing Wahad v. F.B.I.*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998)

The Hidalgo Affidavit does not establish Dr. Hidalgo's background or experience in a way that would demonstrate that he is competent to testify concerning the complex technical matters at issue in this matter, such as website accessibility for the visually impaired or the proper use maintenance, or even understanding of any relevant accessibility tools. Despite this, Dr. Hidalgo makes the conclusory findings that (i) the Website was accessible at the time Plaintiff attempted to access it, (ii) Advice Media made the website *even more accessible*, and that Advice Media will continue to make sure the Website remains accessible. Dr. Hidalgo thus submits testimony in the form of wholly conclusory statements outside of his realm of experience. Because the Hidalgo Affidavit fails to show that the declarant is competent to testify on the matters stated, the "vague and speculative testimony" set forth in the Hidalgo Affidavit is inadmissible and should be stricken and/or disregarded. *See, e.g, ECD Inv. Group*, 2017 U.S. Dist. LEXIS 138066, at *6 (striking declaration that was "sparse as to the basis of [the affiant]'s knowledge" of the subject of the testimony contained in the declaration, "stating only that [the declarant] was 'Director and Counsel' at Credit Suisse"); *DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.,* 2008 U.S. Dist. LEXIS 25916, *21 (S.D.N.Y. March 29, 2008) (*citing Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 57 n.5 (2d Cir. 1998)); *see also Cagan v. Gadman*, 2012 U.S. Dist. LEXIS 162053, at *10 (E.D.N.Y. Oct. 31, 2012).

Further, the information asserted by the Shaw Affidavit is likewise subject to Rule 56 analysis. Accordingly, because the information is contradicted by Plaintiff's expert evidence and was not subject to any discovery to determine the factual basis or accuracy for the assertions made by the Shaw Affidavit, the Shaw Affidavit should likewise be disregarded as ineffective. A dismissal here as a response to Defendant's Rule 12(b)(1) motion to dismiss would be akin to

summary judgement, and "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded an opportunity to conduct discovery." *Gentile v. Ncsplus Inc.*, 2024 U.S. Dist. LEXIS 93347, *4 (S.D.N.Y. May 24, 2024). Here, "[t]his is not one of those 'rarest of cases' where summary judgment may be granted against [Plaintiff], who [has] not yet been an afforded an opportunity to complete discovery." *Id.* Further discovery is necessary to adjudicate the matter on the basis of Shaw Affidavit, including, without limitation, the following issues:

(i)     How Mr. Shaw, who has works for Advice Media, which is a website design, development, and management company (Shaw Affidavit at ¶¶ 3-4) is "very familiar with and conversant with" the WCAG 2.1 guidelines (Shaw Affidavit at ¶ 8);

(ii)    How Mr. Shaw is able to determine that "[t]here is no possible way to describe the phptograph[s] [on the Website] in greater detail" using alt-text (Shaw Affidavit at ¶ 21);

(iii)   How Mr. Shaw is qualified to determine that "[w]hile the ADA requires alt-text, there is no requirement which specifies the level of detail which is necessary" (Shaw Affidavit at ¶ 23), and how he made such a determination;

(iv)    How exactly the "fixes" Mr. Shaw concedes Defendant had to make after Plaintiff's visit to the Website (Shaw Affidavit at ¶¶ 24-27) cured the relevant Access Barriers to the extent that further issues will not occur;

(v)     Whether Mr. Shaw's assertion that the "announcements" made on the Website "[a]re doing exactly what they should be doing vis-à-vis allowing access for the visually impaired" (Shaw Affidavit at ¶ 32) is correct, and how Mr. Shaw came to such a conclusion;

(vi)    On what basis Mr. Shaw "strongly believes" that the Website "as constituted in November 2023 was sufficient to allow visually-impaired users to navigate it with screen readers" (Shaw Affidavit at ¶ 35), and whether the "fixes" that Mr. Shaw

17

*further* concedes Defendant had to make concerning screen readers despite Mr. Shaw's strong belief (*id.*) have fully resolved the issues;

(vii)    What manner of "scan" Advice Media used performed when they "could not find any links that didn't follow that same process" (Shaw Affidavit at ¶ 39; *see also* Shaw Affidavit at ¶ 41, 43), who performed the "scan" and review, and whether such personnel were properly trained in the scanning process utilized;

(viii)    How "the Defendant has and will remain vigilant in its efforts to operate an ADA-compliant website, including for visually impaired and legally blind individuals, and will remain committed to the same moving forward" (Shaw Affidavit at ¶ 54) in light of the findings presented in Plaintiff's expert evidence that show the Website is *currently* not ADA compliant (*see generally*, Moody Decl.); and

(ix)    How Mr. Shaw can "stress once again that the website at issue herein. . . was in compliance with WCAG 2.1, and thus the ADA, prior to Plaintiff's first visit to that site on November 9, 2023 (Shaw Affidavit at ¶ 55) if, without limitation, Mr. Shaw's affidavit makes *explicit concessions* that certain access barriers did indeed exist on the Website at the time of Plaintiff's visit to the Website and were required to be remedied.

In short, Defendant's extrinsic evidence has been untested by the rigors of discovery, and any final determination on such evidence would be entirely premature before allowing Plaintiff to engage in necessary discovery, especially ) in light of the findings presented in Plaintiff's expert evidence that show the Website is *currently* not ADA compliant (*see generally*, Moody Decl.).

### B.  Defendant's Argument for Dismissal Under FRCP 12(b)(6)

Seeking dismissal of the Complaint under Rule 12(b)(6), Defendant argues that Plaintiff failed to state a plausible claim upon which relief can be granted. Each segment of this line of argument will be addressed in turn.

1. <u>Defendant violated the ADA by failing to make its Website accessible to Plaintiff and other visually-impaired consumers.</u>

Defendant first argues that Plaintiff failed to state a claim because "[t]o state a claim under Title III of the ADA, Plaintiff must plead that the Defendant discriminated against her by denying her a full and equal opportunity to enjoy the services Defendant provides. Plaintiff has failed to do so. As stated above, there are no goods or services sold on or provided through the Defendant's website." Def. Memo. at p. 13.

It is unclear what argument Defendant is making, as, while it appears Defendant is arguing that Plaintiff is alleging only an "informational injury," such an argument is more appropriate to attack a Plaintiff's standing under 12(b)(2), not under 12(b)(6). Nevertheless, Plaintiff has sufficiently alleged that she was injured by the Access Barriers on Defendant's Website.

"[A] plaintiff may properly allege an 'informational injury' where the defendant has deprived him of information required to make a 'meaningful choice' on the subject of his inquiry[.] *Young v. Metro. Learning Inst., Inc*., 2023 U.S. Dist. LEXIS 23206, *13-14 (*citing Harty v. W. Point Realty, Inc*., 28 F.4th 435, 444 (2d Cir. 2022) (finding that the plaintiff sufficiently alleged an injury under the ADA despite only alleging an informational injury "[b]ecause Plaintiff has pleaded that he intended to use the information on Defendant's website to decide whether to ultimately enroll in classes, and could not do so due to accessibility barriers").

Here, Amended Complaint clearly alleged that Plaintiff came across Defendant's Website while searching for specialized clinics that offered facial plastic surgery services, and that Plaintiff intended to analyze the information provided on the Website in relation to Plaintiff's search for a plastic surgery services provider. Amended Complaint at ¶ 10. The Amended Complaint then further specifies the information that would otherwise be available to Plaintiff had the Website been accessible, alleging that the Website offers features that allow customers to find information concerning Defendant's physical location and various offers and programs, features that allow consumers to connect with Defendant on social media and features that allow consumers to learn

more about Defendant's operations. Amended Complaint at ¶ 26. The Amended Complaint then alleges that, due to the Access Barriers, Plaintiff was unable to take advantage of such features to learn more about Defendant and Defendant's operations, and that Plaintiff still wishes to obtain the necessary information she needs in order to make a consultation appointment but cannot. *See, e.g.,* Amended Complaint at ¶¶ 35, 37, 38. Accordingly, if Defendant means to take issue with the nature of Plaintiff's informational injury, the Amended Complaint sufficiently alleges the grounds necessary to establish the injury.

2. <u>Defendant's Website is a place of public accommodation under relevant law.</u>

Defendant then seeks 12(b)(6) dismissal by attempting to persuade this Court, contrary to the overwhelming majority position in this District, that its Website is not a place of public accommodation under the ADA. *See* Def. Memo. at p. 14. In support of this attempt, Defendant cites to *Winegard v. Newsday*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021), stating "[i]n dismissing the claim [at issue in that case], the Court held that the term 'public accommodation' under the ADA refers to physical places where goods and services are sold, and not standalone websites." Def. Memo. at p. 14. As a very initial matter, Defendant's Website here is *not* a standalone website, as it is directly tied to Defendant's physical offices. Even further, the analysis in *Winegard* has been already recognized to <u>not be</u> compelling, and even <u>flawed</u>. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 19 (S.D.N.Y. 2022) ("[f]or the following reasons, this Court does not find *Winegard*'s reasoning compelling") (*listing reasons*); *Martinez v. Gutsy LLC*, 2022 U.S. Dist. LEXIS 214830, *10 (finding *Winegard*'s application of the canons of *ejusdem generis* and *noscitur a sociis* as "flawed," as "[s]ome of the entities listed as public accommodations in §12181(7)(E) and (F) are not *necessarily*, or even *predominantly*, brick-and-mortar places of commerce") (*emphasis in original*); *Walters v. Fischer Skis U.S., LLC*, 2022 U.S. Dist. LEXIS 142148, at *19 (N.D.N.Y. Aug. 10, 2022) (*citing cases* and holding "[t]hese decisions indicate that a brick-and-mortar

presence is not necessary. Therefore, the Court rejects the [d]efendant's theory of the canon of *ejusdem generis* in this case").

Rather, the strong judicial trend that continues both in this District and under the Second Circuit is supported by decisions that directly engage in intensive statutory analysis to determine the issue and conclude that stand-alone websites are places of public accommodation for purposes of ADA protection. *See, e.g.*, *Tavarez v. Moo Organic Chocolates*, LLC, 2022 U.S. Dist. LEXIS 154249, at *4 (S.D.N.Y. Aug. 26, 2022) (analyzing the language and intent of the ADA and holding that "this Court concurs with the vast majority of other judges in this District who have decided the issue that a 'place of public accommodation' includes public-facing websites that are not tethered to a physical location"); *see also id*. at *4, fn. 2 (noting that "at least seven of [the court's] colleagues, one of whom has since ascended to the Second Circuit, have found that Title III of the ADA applies to websites") (*citing cases*).

Further, a finding that a stand-alone website is not a place of public accommodation would effectively ignore the reality that internet shopping poses, especially to visually impaired consumers, and would work directly against the express congressional intent of the ADA. As stated succinctly by the Court in *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 344 (S.D.N.Y. 2023):

> A holding today that limits places of public accommodation to the brick-and-mortar standard would severely hamper Congress' effort to protect disabled persons who want and need access to the growing number of online-only providers of goods and services. Such an anomalous result could not have been Congress' intention. *See S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (counseling against interpreting a statute in a way that yields an absurd result). In fact, the ADA was meant to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). For this reason, as this Court previously determined, a stand-alone website qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal enjoyment.

*See also Guerrero v. Ellusionist.Com, Inc.*, 2023 U.S. Dist. LEXIS 97870, at *8-9 (S.D.N.Y. June 6, 2023) ("If the statute were interpreted narrowly to preclude the 'vast world of Internet Commerce' from being considered a place of 'public accommodation,' Congress' purpose in adopting the ADA would be frustrated") (*citing Del-Orden v. Bonobos, Inc.,* 2017 U.S. Dist. LEXIS 209251, at *2 (S.D.N.Y. Dec. 20, 2017)); *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 771 (S.D.N.Y. 2020) ("[a] test that determined whether a website is subject to the ADA by analyzing whether and to what extent the website impedes a 'plaintiff's access to a specific, physical, concrete space, and establishes some nexus between the website and the physical place of public accommodation' is both unworkable and would produce absurd results").

To summarize, "[c]ourts in the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate." *Dominguez*, 613 F. Supp. 3d 759, 772. Given the clear judicial trend and well-documented congressional intent in establishing the ADA, Defendant's argument, supported by a single legal citation that lies in the extreme minority of cases with analyse that is recognize as flawed, is unavailing.

      3.  <u>Whether Plaintiff requested an accommodation before filing the instant lawsuit is irrelevant.</u>

Finally, Defendant seeks 12(b)(6) dismissal by arguing "the First Amended Complaint does not allege that [Plaintiff] or her counsel provided the Defendant with notice of her visual impairment and the barriers she allegedly encountered on the Defendant's website, and requested that such barriers be fixed to accommodate her needs. The First Amended Complaint also does not allege that the Defendant denied any such request, particularly since Plaintiff made no such request and, instead, rushed to file this lawsuit." Def. Memo. at p. 14. This is irrelevant, as Plaintiff has not raised a reasonable accommodation claim under the ADA. *See, e.g., Davis v. Wild Friends Foods, Inc*., 2023 U.S. Dist. LEXIS 115542, 2023 WL 4364465, at *10 (S.D.N.Y. July 5, 2023) (distinguishing a case cited by the defendant addressing this line of reasoning and noting "[t]hose

cases did not hold that defendant must be given notice of a plaintiff's disability for purposes of a disparate impact or intentional discrimination claim"); *Guerrero v. Ogawa USA Inc*., 2023 U.S. Dist. LEXIS 109579, 2023 WL 4187561, at *6 (S.D.N.Y. June 26, 2023) ("[P]laintiff does not need to have requested an accommodation before filing this suit because the FAC states a claim on the first two theories of liability, disparate treatment and disparate impact")*; Donet v. Isamax Snacks, Inc*., 2023 U.S. Dist. LEXIS 141913, *6 (S.D.N.Y. August 14, 2023) (*adopted by, Motion denied by Donet v. Isamax Snacks, Inc.*, 2023 U.S. Dist. LEXIS 165122 (S.D.N.Y., Sept. 18, 2023).

### C. Defendant's Remaining Arguments for Dismissal of Plaintiff's State Law Claims, City Law Claims, and Declaratory Relief.

On the basis of its arguments for dismissal under both 12(b)(1) and 12(b)(6), Defendant then requests that this Court dismiss Plaintiff's New York State and New York City causes of action, as well as Plaintiff cause of action for declaratory relief, or in the alternative, decline to exercise supplemental jurisdiction Plaintiff's New York State and New York City causes of action. *See* Def. Memo. at pp. 15-17. However, as demonstrated above, Defendant's arguments for dismissal fail; accordingly, these requests also fail and should be denied.

## IV.    <u>CONCLUSION</u>

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated:    Hicksville, New York
        August 19, 2024

MARS KHAIMOV LAW, PLLC
*Attorneys for Plaintiff*

/s/ Mars Khaimov
By: Mars Khaimov, Esq.
100 Duffy Ave., Suite 510
Hicksville, New York 11801
Tel (929) 324-0717
Fax (929) 333-7774
Email: mars@khaimovlaw.com